UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                            :

MEDICI CLASSICS PRODUCTIONS LLC,     :   07 Civ. 9938 (RJH)
                                            :

                     Plaintiff    :   ECF Case
                                            :

      -against-                         :
                                            :

MEDICI GROUP LLC, MEDICI ARTS LLC,     :
EUROARTS MEDIEN GmbH, EUROARTS     :
MUSIC INTERNATIONAL GmbH, MEDICI     :
ARTS LIMITED U.K., IDEALE AUDIENCE     :
GROUP, S.A., ROBERT T. WALSTON,        :
THOMAS BAER and                    :
JOHN DOES Nos. 1 to 10,             :
                                            :

                    Defendants.   :
                                            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

**Memorandum of Law of Plaintiff
In Opposition of Motion To Dismiss
Of Defendants Medici Group LLC and Robert T. Walston**

# TABLE OF CONTENTS

**Page**

Preliminary Statement.................................................................................................1

Statement of Facts.....................................................................................................1

Argument ...................................................................................................................6

    I.     Sales of Infringing Goods Via An Interactive Website Constitute "Doing Business" In New York And Thus Render The Internet Seller Amendable To Jurisdiction Here ..................................................................................6

    II.    Group Is A Citizen Of New York And Engaged In Substantial Activities In New York In Conceiving Of And Then Helping Create And Sell Via The Internet To New York Residents Exhibits 18 And 20 .............................................................8

    III.   Walston And Group Are Vicariously And Contributorily Liable For Trademark Infringement And Therefore By Reason Of Internet Sales Are Doing Business In New York...........................................................................................10

    IV.   Personal Jurisdiction Over Group And Walston Exist Under New York CPLR 302(a)(3)(ii)..........................................................................................11

         A.    Substantial Revenue From International Commerce ...................................12

         B.    Tortious Act Outside of the State................................................................12

         C.    Injury in New York......................................................................................12

         D.    Foreseeability of Injury to Medici in New York ........................................13

    V.    The Assertion Of Personal Jurisdiction Over Walston And Group Comports With Due Process.....................................................................................................14

Conclusion ...............................................................................................................16

# TABLE OF AUTHORITIES

**CASES**                                                                                                                          **Page**

*Accord Kernan v. Kurz-Hastings, Inc.,*
     175 F.3d 236 (2d Cir. 1999) ................................................................13

*Alpha Int'l, Inc. v. T- Reproductions, Inc.,*
     02 Civ. 9586, 2003 U.S. Dist. LEXIS 11224 (S.D.N.Y. 2003) ...........................7

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*
     171 F.3d 779 (2d Cir. 199) .........................................................12, 13

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*
     305 F.3d 120 (2d Cir. 2002) ................................................................14

*Burger King Corp. v. Rudzewicz*
     471 U.S. 462 (1985) ................................................................14

*Burton Handelsman v. Bedford Village Associates Ltd. P'Ship,*
     213 F.3d 48 (2d Cir. 2000) ................................................................9

*Chaiken v. VV Publ. Corp.,*
     119 F.3d 1018 (2d Cir. 1997) ................................................................14

*Comm'cn. Partners Worldwide v. Main St. Resources,*
     04 Civ. 10003, 2005 U.S. Dist. LEXIS 14911 (S.D.N.Y. 2005) .........................12

*Helicopteros Nacionales de Colombia, S.A. v. Hall*
     466 U.S. 408 (1984) ................................................................14

*Ingraham v. Carroll,*
     90 N.Y.2d 592 (1997) ................................................................12

*Int'l Shoe Co. v. Washington,*
     326 U.S. 310 316 (1945) ................................................................14

*Inwood Labs., Inc. v. Ives Labs.,*
     456 U.S. 844 (1982) ................................................................10

*LaMarca v. Pak-Mor Mfg. Co.,*
     95 N.Y.2d 210 (2000) ................................................................12, 13

*Martinez v. Am. Standard Co.,*
 457 N.Y.S. 2d 97 (N.Y. App. Div. 1982) ............................................. 13

*Mattel, Inc. v. Adventure Apparel,*
 00 Civ. 4085, 2001 U.S. Dist. LEXIS 3179 (S.D.N.Y. 2001) ............... 7

*Metro Life Ins. Co. v. Robertson-Ceco Corp.,*
 84 F.3d 560 (2d Cir. 1996) .................................................................... 14

*New Angle Pet Prods. V. MacWillie's Golf Prods.,*
 06 Civ. 1171, 2007 U.S. Dist. LEXIS 46952 (E.D.N.Y. 2007) .............. 7

*Pearson Educ., Inc. v. Yi Shi, d/b/a CollegeSolutions,*
 525 F.Supp.2d 551 (S.D.N.Y. 2007) ....................................................... 7

*Philip Morris USA Inc. v. Veles Ltd.,*
 06 Civ. 2988, 2007 U.S. Dist LEXIS 19780 (S.D.N.Y. 2007) ............... 7

*Timothy Hecke v. Clear Channel Commc'ns, Inc.,*
 04 Civ. 1583, 2005 U.S. Dist. LEXIS 7317 (S.D.N.Y. 2005) ............... 10

*Sybon Corp. v. Wetzel,*
 46 N.Y.2d 197 (1978) ............................................................................ 12

*Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.,*
 751 F.2d 117 (2d Cir. 1984) .................................................................. 10

*Worldwide Volkswagen Corp. v. Woodson,*
 444 US. 286 (1980) ........................................................................... 13, 14

## Statutes and Rules

C.P.L.R. 301 (a)(1) ........................................................................................ 6

C.P.L.R. 302 (a)(3)(ii) ........................................................................ 11, 12, 13

N.Y. C.P.L.R. § 302 (a)(1) ............................................................................ 7

**Preliminary Statement**

Plaintiff Medici Classics Productions LLC ("Medici") respectfully submits this Memorandum of Law in opposition to the motion of Defendants Medici Group LLC ("Group") and Robert T. Walston ("Walston") to dismiss this action upon the ground that this Court lacks jurisdiction over their persons.

**Statement of Facts**

The following facts are not in dispute:

1.     Walston formed Group as a Delaware limited liability company in or about August 2004. Transcript, p. 8, ll. 2-6.[1]

2.     Walston was initially the sole member and manager of Group. Transcript, p. 9, ll. 22-25.

3.     Walston obviously chose the name "Medici Group LLC."

4.     Walston obviously had a business plan when he formed Group.

5.     Today, Walston is a member and the managing member of Group, which has six other members, all of whom are natural persons. Transcript p. 10, ll. 6-11.

---

[1]  Submitted with this Memorandum are the declarations of Jerome Rose dated June 1, 2008 and the declaration of J. Joseph Bainton, dated June 2, 2008. References to the Rose and Bainton Declarations are in the form of "Rose ¶[   ]" and "Bainton ¶ [   ]." Attached to the Bainton declaration as Exhibit A is the transcript of the deposition of Walston that was conducted on May 21, 2008. References to that transcript are in the form of "Transcript, p. [   ], ll. [   ]." Attached as Exhibit B is a stipulation among the present parties relating to certain sales. References to it are in the form of "Stipulation, ¶ [   ]." Attached hereto as Exhibit C to the Bainton Declaration, arranged in numerical order, are copies of the Exhibits to which reference is made in either the Transcript, the Stipulation, the Rose Declaration or the Bainton Declaration. They have been submitted collectively arranged in ascending numerical order simply for ease of the Court's reference. Some of these exhibits are images of the packaging of recordings which themselves are not amenable to filing by ECF. These images are less than ideal. The original exhibits will be brought to the hearing on this matter and have already been inspected by counsel for the moving parties.

6.      Group owns 100% of Mosaic Digital Studios LLC ("Mosaic") and Medici Arts LLC ("Arts").  Exh. 22, Organization Chart, page 1 of 3.

7.      Group is engaged in two businesses (a) Media/I.T. Services through companies owned by Mosaic and (b) Audiovisual Music Production and Distribution through companies owned by Arts.  *Id.*

8.      Walston formed Mosaic as a Delaware limited liability company within months of forming Group.  Transcript, p. 9, ll.9-21.

9.      Walston formed Arts as a Delaware limited liability company in or about October 2006.  Transcript, p. 8, l. 7 – p. 9, l. 8.  Walston is the sole member of Arts.  Transcript, p. 68, ll. 1-5.

10.      Both audio recordings and audiovisual recordings bearing the trademarks "Medici Masters" and "Medici Arts" are available for sale and have been purchased in "brick and mortar" facilities located within the City of New York.  Exh. 3, 18.

11.      Both audio recordings and audiovisual recordings bearing the trademarks "Medici Masters" and "Medici Arts" are available for sale and have been purchased by New York City residents via the internet.  Exhibits 5, 7, 10, 12, 15, 18, 19, Stipulation ¶¶ [   ].

12.      There have been frequent public references to the "Medici Group family of companies" that have been authored by one or more Medici Group companies that are worded in a way that ignores the juridical separateness upon which the moving defendants now seek to rely, e.g:

   a.   Exhibit 22, a press release issued by Group about which Walston testified that a reference to "Medici Arts" did not refer to a specific entity.  "I think this

2

comment, this is certainly intended to describe **the company** generally, without laying out the specifics of the organization structure." Transcript. P. 16, l. 22 – p. 17, l. 3.  (Emphasis added.)

b.   Walston admitted that he had knowingly been inaccurately characterized as the "Chief Executive Officer" of Group.  Transcript p. 19, ll. 9 – 19.

c.   Walston also admitted that he falsely held himself out as the "Chairman" of Group.  Transcript, p. 20, ll.17-20.

d.   Walston testified that a references in Exhibit 38, a print-out of the "Contact" section of www.euroarts.com to "Medici Group Europe" is false and in fact there is no such thing as "Medici Group Europe." Transcript, p. 64, ll. 2 – 12.

e.   Walston testified that a reference to a "Management Board" of EuroArts consisting of him, the CFO of the non-existent Medici Group Europe, a EuroArts Managing Director and an EuroArts General Counsel was also false.  Indeed, he claimed that there is no "Management Board" of EuroArts.  Transcript, p. 62, l. 11 – p. 64, l. 15.

f.   Walston admitted that a reference to "Elektrofilm Group" in Exhibit 26 (website information telling the public Walston is "CEO of Elektrofilm Group") is false and in fact there is no "Elektrofilm Group." Transcript, p. 83, l. 14 – p. 84, l. 17.

13.   The public statements about Defendant Thomas Baer, the Vice Chairman of Group and a life time director of Medici Arts, B.V., and Walston's testimony about Mr. Baer are worthy of a separate treatment:

a.   Exhibit 22, a press release, refers expressly to an office of Group located in Manhattan, yet Walston testified: "There is no office in New York.  We have an

3

occasional consultant in New York who resides in New York. And there is nothing further from that. There is no operations. There is no office. There is no business conducted. There is a consultant who sits in his own office in New York. That's the extent." Transcript p. 17, ll. 16-24.

b.  Walston testified that the New York office address to which reference was made in Exhibit 22 was to Mr. Baer's office, but continued to insist that Mr. Baer was a "consultant." Transcript p. 17, l. 25 – p. 18, l. 7.

c.  Walston then admitted that Mr. Baer held himself out as "Vice Chairman" of Group. Transcript, p. 18, l. 8 – p. 19, l. 8.

d.  Walston admitted that he – and he alone – granted Mr. Baer permission to hold himself out to the public as Vice Chairman of Group. Transcript, p. 41, ll. 17- 25.

e.  Walston testified that Group Vice Chairman Baer "is not an employee of Medici Group, LLC or EuroArts Music International nor is he an employee of any other entity affiliated with Medici Group, LLC." Transcript, p. 21, ll. 15-23.

f.  Walston then admitted that not only was Mr. Baer "Vice Chairman of Group," but was one of the initial directors of Medici Arts, B.V., a Dutch company that owns directly or indirectly all of the Medici Group family of companies located in Europe. Transcript, p. 36, l. 9 – p. 39, l. 12.

g.  Walston testified that the service of Mr. Baer (or some other individual) as a director of Medici Arts, B.V., was a requirement of Dutch law and that he personally had asked Mr. Baer to serve[2]. *Id.*

---

[2]  It is undisputed that Mr. Baer is a New York lawyer.

    h.   Walston testified that Medici Arts, B.V., was a "particular tax structure," had no operations and that Director Baer has no obligations under Dutch law other than to put his signature on the annual tax return observing "That doesn't sound very impressive, but that's what it is." Transcript, p. 39, l. 15 – p. 40, l. 6.

    i.   Indeed, Mr. Walston testified extensively about tax planning in creating the structure (Exh. 33, Organization Chart) of what is advertised on www.medici.tv (Exh. 21) as "one name Medici Arts," "one field of expertise," "one self imposed standard" and "one belief." Again, Walston is the sole member of Arts.

    j.   Walston also testified that the references in Exhibit 38, a print-out of the "Contact" section of www.euroarts.com to (a) "Euroarts (North America)" with an address at 650 Madison Avenue and (b) Mr. Baer were false.

    k.   One of the six other members of Group, Michael Steinhardt, has also maintained an office at that address. Rose ¶ 45.

14.    Walston/Group has approved every acquisition or significant project of every Medici Group company since Group was formed by Walston. Transcript p. 11, l. 16 – p. 13, l. 4 ("I was involved in approving the transaction and involved in securing the funding and financing for it."); Transcript, p. 57, l. 18 – p. 58, l. 9 (when asked whether a reference on the website www.medici.tv to the fact that "Medici Arts comprises a team of 50 people around the world" included him as a team member, Walston testified "if they want to make a production that requires capital or some sort of financing, they have to come to me to get the money and get it approved."); Transcript, p. 78, l. 6 – 81, l. 17 (testifying about reviewing due diligence materials, approving price and obtaining financing); Transcript, p. 106, ll. 1-10 (testifying in respect of Exhibit 18, a Medici Arts branded DVD of New York Philharmonic North Korea performance

earlier this year) ("they presented me a budget summary of what it was going to cost, the income **we** would expect to derive from it, and if it met – which it met **our** criteria. And the product was approved.") (Emphasis added.)

      15.    While Walston admitted no day-to-day operational responsibility, the e-mail from the General Counsel of Defendant EuroArts Medien GmbH that essentially set this case in motion has an element of the standard company signature block a reference to Walston as "Geschaftsfuhrer." Geschaftsfuhrer literally translated means "business leader." Exh. 46; Rose ¶22..

      16.    The "new label Medici Arts" was launched after this lawsuit was commenced. Exh. 49.

**Argument**

**I.  SALES OF INFRINGING GOODS VIA AN INTERACTIVE WEBSITE CONSTITUTE "DOING BUSINESS" IN NEW YORK AND THUS RENDER THE INTERNET SELLER AMENDABLE TO JURISDICTION HERE**

      The Internet in general and interactive websites in particular have changed traditional notions of "doing business" in the State of New York.

      C.P.L.R. 301(a)(1) provides:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent...transacts any business within the state or contracts anywhere to supply goods or services in the state"

      Sales of infringing goods into New York over the Internet establish jurisdiction under this section for a claim arising out of the sales. *Pearson Educ., Inc. v. Yi Shi, d/b/a CollegeSolutions*, 525 F. Supp. 2d 551 (S.D.N.Y 2007) (collecting cases on *in personam* jurisdiction based upon internet sales to New York residents via an interactive website); *New Angle Pet Prods. v. MacWillie's Golf Prods.*, 06-CV-1171, 2007 U.S. Dist. LEXIS 46952 , *8-9

6

(E.D.N.Y., June 28, 2007) (finding personal jurisdiction where defendant made two sales over the Internet into New York); *Philip Morris USA Inc. v. Veles Ltd.,* No. 06 CV 2988, 2007 U.S. Dist. LEXIS 19780, 2007 WL 725412, at *5 (S.D.N.Y. Mar. 12, 2007) (personal jurisdiction existed based on a single order for three cartons of cigarettes); *Alpha Int'l, Inc. v. T-Reproductions, Inc.,* No. 02 Civ. 9586, 2003 U.S. Dist. LEXIS 11224, 2003 WL 21511957, at *3 (S.D.N.Y. July 1, 2003) (finding personal jurisdiction where defendant sold "at least one accused product to a New York resident through its website"); *Mattel, Inc. v. Adventure Apparel,* 00 CIV. 4085, 2001 U.S. Dist. LEXIS 3179, 2001 WL 286728, at *3 (S.D.N.Y. Mar. 22, 2001) ("Here, [a New York private investigator] ordered allegedly infringing merchandise from Adventure over its web site, using his credit card, and Adventure shipped that merchandise into New York. This activity not only involved the exchange of payment and shipping information but, moreover, was a commercial transaction that was actually consummated on line. These activities were sufficient to bring Adventure into the category of a defendant 'transacting any business,' via the internet, in New York within the meaning of N.Y. C.P.L.R. § 302(a)(1).").

Both Walston and Group admit that Group "has three foreign subsidiaries involved in audiovisual music production and distribution that produce classical music merchandise, some portion of which is marketed under the name "Medici." Moving Memorandum of Law at page 3.

Walston and Group also admit the sale by Group subsidiaries (whose time to answer the amended complaint has not yet expired) of recordings bearing either a "Medici Masters" or a "Medici Arts" trademark via interactive internet sites. Exhs. 4, 5, 6, 8, 9, 11, 13 and 18; Stipulation ¶¶ 5, 7, 10, 12, 15, 19. Both common sense and the procedural posture of

this case deem these goods to infringe Plaintiff's federally registered "Medici Classics Productions" trademark[3].

The questions thus become how, if at all, are Walston or Group directly or vicariously liable for these infringing internet sales to New York residents and how, if at all, does this Court have jurisdiction over their persons.

The answer to both questions is in the affirmative and the Court need look no further than the admitted involvement of Walston and Group in the creation Exhibits 18 and 20 after this action was commenced to reach that conclusion.

## II.    GROUP IS A CITIZEN OF NEW YORK AND ENGAGED IN SUBSTANTIAL ACTIVITIES IN NEW YORK IN CONCEIVING OF AND THEN HELPING CREATE AND SELL VIA THE INTERNET TO NEW YORK RESIDENTS EXHIBITS 18 AND 20.

Exhibit 18 is a still shrink-wrapped recording of the performance of the New York Philharmonic Orchestra in Pyongyang North Korea earlier this year. It bears the "Medici Arts" trademark. Exhibit 20 is the booklet about the production that is inside Exhibit 18 together with a DVD containing the performance. It too mentions "Medici Arts" at page 22.

The creation of Exhibits 18 and 20 was conceived by Group Vice Chairman Thomas Baer. Transcript, p. 98, l. 15 – p. 20, l. 4. Vice Chairman Baer maintains his office at 650 Madison Avenue and resides in New York. The same is the case with Group Member Michael Steinhardt. Rose ¶ 45; Exh. 50. Group is therefore, at least for diversity purposes, a citizen of the State of New York. *Burton Handelsman v. Bedford Village Associates Ltd. P'ship*, 213 F.3d 48, 52 (2d Cir. 2000).

The facts that (a) Group's Vice Chairman, Mr. Baer, and at least one of its seven members, Mr. Steinhardt, work at 650 Madison Avenue, New York, New York; (b) Group has

---

[3]  Since commencement of this action, Medici has obtained a registration for its mark from the USPTO. Exh. 51.

issued a press release referring to its New York Office (c) The New York Philharmonic is headquartered in New York; (d) Exhibit 20 at page 24 credits Vice Chairman Baer as one of two "Executive Producers" of the infringing DVD; (e) Exhibit 20 at page 22 refers to "EuroArts Music International (a Medici Arts Company)"; (f) the fact that Walston is the sole member of Arts; (g) the performance was available on www.medici.tv; and (h) Exhibit 18 is being sold via the internet all tie to New York the Group/Walston decision that the New York Philharmonic project "met our criteria" and was economically viable after considering what it was going to cost and "the income we would expect to derive from it [in part from internet sales to New York residents]" (Transcript, p. 106, l. 8)[4].

Walston and Group were thus directly responsible for the internet sales of this infringing DVD to New York residents. In fact, "but for" the actions of Walston and Group these infringing internet sales would not have occurred.

---

[4]   Medici asked for production of documents reflecting what Walston has said to Group's investors/members. While originally told there were no such documents, Walston testified about Power Point Presentations he used when reporting to Group's members. Medici then asked for production of the Power Point presentations. Walston/ Group has refused to produce them claiming they are not relevant. The relevant exchanges of correspondence on this topic consist of Exhibits 52, 53 at 2, and 54 respectively. Walston's testimony about these Power Point presentations appears at page 80, line 16 to page 82, line 14. Since they are in the possession of Walston's attorneys, Medici respectfully suggests that counsel bring the Power Point presentations to the hearing on this motion on the chance that the Court may agree that they are discoverable.

### III.  WALSTON AND GROUP ARE VICARIOUSLY AND CONTRIBUTORILY LIABLE FOR TRADEMARK INFRINGEMENT AND THEREFORE BY REASON OF INTERNET SALES ARE DOING BUSINESS IN NEW YORK

Non-direct infringers can be held liable for trademark infringement under the doctrines of contributory infringement and vicarious infringement.  Walston and Group are liable under both theories.

Walston and Group are contributory infringers because when they "approved" the project represented by Exhibit 18 and then contributed the funds with which it was created they knew that the end product bearing an infringing "Medici Arts" trademark would be sold via an interactive website.  Indeed, at the time Walston /Group gave Group's European subsidiaries the "go ahead" on the North Korea project they knew that those subsidiaries were already infringing Medici's marks by reason of the sale of other recordings bearing either a "Medici Masters" or "Medici Arts" trademark.  By reason of their encouragement of the continued use of the infringing "Medici Arts" trademark Walston/Group are contributory infringers.  *Inwood Labs., Inc. v. Ives Labs.*, 456 U.S. 844 (1982).  In fairness, Walston/Group did more than encourage – they literally made Exhibit 18 possible.

As to vicarious liability, Group and Walston's reliance on general corporate veil piecing cases such as *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117 (2d Cir. 1984) in the context of this Lanham Act case is misplaced.

> A parent company can be held vicariously liable for its subsidiaries infringing activities if it has both (1) "a direct financial interest in the infringing activity," and (2) "the right and ability to supervise the subsidiary, which is evidenced by some continuing connection between the two in regard to the infringing activity." *Banff Ltd. v. Limited, Inc.*, 869 F. Supp. 1103, 1110 (S.D.N.Y. 1994).

*Timothy Hecke v. Clear Channel Commc'ns, Inc.*, 04 Civ. 1583, 2005 U.S. Dist. LEXIS 7317; Copy. L. Rep. (CCH) P29018 (S.D.N.Y. 2005).

10

Group is a limited liability company that is engaged in a world-wide business via a structure that Walston admitted was tax-driven:

> That's the whole reason for LLCs. It's a tax-driven structure so you don't have double taxation. A corporation would capture the tax liability. An LLC passes it through. So we use that structure so we pay tax once.

Transcript, p. 26, ll. 15-20.

Here, there is no question that ultimately Walston and the six other members of Group have the greatest financial interest in the income from the proceeds of internet sales of Exhibit 18.

As to the second element, Walston and Group could have declined to fund the project to create Exhibit 18 unless they were assured that the North Korea recording would not be marketed bearing a "Medici Arts" trademark. Instead, they funded the project and in turn funded the full page advertisement in *Gramophone* magazine announcing the new Medici Arts "label." Exh. 49. There is therefore ample evidence of a "continuing connection" between Walston/Group and Group's European subsidiaries in respect of infringement of Medici's federally registered trademark from which Walston and the other members of Group are the ultimate financial beneficiaries.

## IV.    PERSONAL JURISDICTION OVER GROUP AND WALSTON EXISTS UNDER NEW YORK CPLR 302(a)(3)(ii)

CPLR 302(a)(3)(ii) confers personal jurisdiction over an out-of-state defendant if

> (1) [the] defendant committed a tortious act outside the State, (2) defendant's tortious activity caused injury to a person within the State, (3) defendant should reasonably have expected the act to have consequences in the State, and (4) defendant derives substantial revenue from interstate or international commerce.

*See* N.Y. CPLR 302(a)(3)(ii) (2007); *LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 214 (2000); *Comm'cn. Partners Worldwide v. Main St. Resources*, 04 Civ. 10003, 2005 U.S. Dist. Lexis 14911, at *19-20 (S.D.N.Y. July 25, 2005). These elements are met here and the exercise of personal jurisdiction over Group and Walston is proper.

## A. Substantial Revenue From International Commerce

CPLR 302(a)(3)(ii), in contrast to the constitutionally maximal long-arm statutes of other states, has a substantial revenue element, which the Legislature added specifically to exempt from suit defendants whose activity is of a distinctly local character. *Ingraham v. Carroll*, 90 N.Y.2d 592, 599 (1997) (quoting the 12th Ann. Report of N.Y. Judicial Conference, at 342-43).

Here, given the LLC tax structure described above, it is beyond cavil that Group and Walston derive substantial revenue from interstate and international commerce. Some of that revenue -- that funnels ultimately up to the members of Group while avoiding double taxation -- is derived from internet sales of infringing goods to New York residents.

## B. Tortious Acts Outside of the State

Walston admitted that his approval (and that of Group) was required in order for Exhibit 18 to come into being. That decision/approval was admittedly made outside of the State of New York, presumably in California.

## C. Injury in New York

Medici is a New York limited liability company with its only place of business in New York City. The second prong of CPLR 302(a)(3)(ii) is governed by the situs-of-injury test, as set forth in *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999) ("*BBL I*"), and *Sybron Corp. v. Wetzel*, 46 N.Y.2d 197, 205 (1978). This test requires

12

that the "original event which caused the injury" be located in New York. *BBL I*, 171 F.3d at 791. Here, there can be no question that Medici suffered an injury in New York when New York residents purchased recordings bearing an infringing Medici mark, including of course Exhibit 18.

### D. Foreseeability of Injury to Medici in New York

The foreseeability component of CPLR 302(a)(3)(ii) requires the defendant to reasonably have expected its out-of-state tortious act to have consequences in New York. N.Y. CPLR 302(a)(3)(ii); *LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 214 (2000). Prior to 2000, in order to avoid federal-state conflicts, New York courts interpreted this element under the "purposeful availment" rubric established by *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). *Accord Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 240-41 (2d Cir. 1999); *Martinez v. Am. Standard Co.*, 457 N.Y.S.2d 97, 98-99 (N.Y. App. Div. 1982), *aff'd*, 60 N.Y.2d 873, 470 N.Y.S.2d 367, 458 N.E.2d 826 (1983). However, in *LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 215 (2000), the New York Court of Appeals analyzed the reasonable expectancy prong differently. *LaMarca* requires that the defendant need only reasonably foresee that his tortious act would have direct consequences in New York. *Id.*

At the time Walston/Group decided to proceed with Exhibit 18, this action was already pending. They knew that Medici – like every other label – sells via the internet. They knew that if they funded the North Korea project, that recording too would be sold both on the internet and in New York "brick and mortar" stores. Thus Walston/Group should have foreseen injury to Medici in New York at the time they went forward with the North Korea project – if not sooner.

13

## V.  THE ASSERTION OF PERSONAL JURISDICTION OVER WALSTON AND GROUP COMPORTS WITH DUE PROCESS

The assertion of personal jurisdiction comports with due process if two elements are met.  First, the defendant must have sufficient minimum contacts with the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Minimum contacts exist where the defendant "purposefully availed" itself of the privilege of doing business in the forum state and could foresee being "haled into court" in that state.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *World-Wide Volkswagen*, 444 U.S. at 297.  Second, the assertion of personal jurisdiction must comport with "traditional notions of fair play and substantial justice," *Int'l Shoe*, 326 U.S. at 316, which require that jurisdiction be "reasonable under the circumstances of a particular case."  *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996).

Purposeful availment can be predicated upon either general or specific contacts with the forum state.  *Burger King,* 471 U.S. at 472-73 n.15 (1985); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 128 (2d Cir. 2002) ("*BBL II*").  Specific jurisdiction requires that the plaintiff's claim arises out of or relate to the defendant's contacts with the forum state.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Chaiken v. VV Publ. Corp.*, 119 F.3d 1018, 1028 (2d Cir. 1997).  Medici must also show that Defendants purposefully availed themselves of the privilege of conducting activities in the forum state and that they could foresee being haled into court in New York.  *Chaiken*, 119 F.3d at 1028.

Here, Exhibit 18 was conceived by Group Vice Chairman Baer, whose office is in

14

New York City. Exhibit 18 exists, in part, because of the "relationship" between Vice Chairman Baer and the New York Philharmonic, which is also headquartered in New York. Exhibit 18 is being sold to New York residents both in brick and mortar stores and via the internet. The income from those sales is channeled (after careful tax planning) to Group and ultimately its members including Walston and Michael Steinhardt, who like Vice Chairman Baer and the New York Philharmonic, is also based in New York City.

      At the time Walston/Group proceeded with the North Korea project with the New York Philharmonic this action had already been commenced. Thus when Walston/Group made the creation of Exhibit 18 possible, they should have reasonably expected to be haled into Court as a result of that conduct which quite foreseeably would cause damage to Medici in New York.

      The evidence shows that at least insofar as Exhibits 18 and 20 are concerned, the claim of Walston/Group that they had "no involvement in the products" is simply not true. Those products would not exist "but for" the conduct of Walston/Group that foreseeably would cause damage to Medici in New York.

## Conclusion

For the foregoing reasons, the motion of Walston and Group to dismiss the amended complaint as against them upon the ground that the Court lacks jurisdiction over their persons should be denied in all respects.

Dated: New York, New York
        June 2, 2008

                                        BAINTON McCARTHY LLC

                                        By: _____
                                              J. Joseph Bainton (JB-5934)
                                        26 Broadway, Suite 2400
                                        New York, NY 10004-1840
                                        Telephone: (212) 480-3500
                                        *Attorneys for Plaintiff*

Mark D. Wessel,

        Of Counsel

16