UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
MEDICI CLASSICS PRODUCTIONS LLC,   :
:
          Plaintiff   :
:
-against-   :
:    1:07-cv-09938 (RJH)
:
MEDICI GROUP LLC, MEDICI ARTS   :
LLC, EUROARTS MEDIEN GmbH,   :    JEROME ROSE DECLARATION
EUROARTS MUSIC INTERNATIONAL   :
GmbH, MEDICI ARTS LIMITED U.K.,   :
IDEALE AUDIENCE GROUP, S.A.,   :
ROBERT T. WALSTON, THOMAS BAER   :
and   :
JOHN DOES Nos. 1 to 10,   :
:
          Defendants.   :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

        JEROME ROSE, hereby declares under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

        1.     I am the Managing Member of Plaintiff Medici Classics Productions LLC ("Medici"). I make this declaration in opposition to the motion to dismiss of Defendant Medici Group LLC and Robert T. Walston. I also make this deposition in contemplation of a motion for summary judgment in favor of Medici, which I understand will be discussed at the next hearing before the Court scheduled for June 19, 2008.

        2.     Submitted with this declaration is an Appendix of Exhibits to which I refer below. In addition, I refer to the transcript of the deposition of Mr. Walston that was conducted on May 21, 2008. References to Exhibits in the Appendix are in the form of "Exh. [ ]." References to Mr. Walston's testimony are in the form of "Transcript, p.[ ], ll. [ ] – [ ]."

**My Background**

3. I am a concert pianist. I gave my first public performance at the age of 15 with the San Francisco Symphony under conductor Arthur Fiedler. Exhibit 44 is a recent article about me written by Patrick Meanor that appeared in the magazine "Clavier." It describes generally my background and accomplishments. I respectfully incorporate it by reference. As the article suggests, I have concentrated my work in the genre of what is commonly referred to as classical music.

4. My performances of classical music have been recorded over the years and offered for sale to the consuming public by six record labels, the best known of which I believe is Sony. All of the recordings of my performances and the record labels on which they are available for purchase are summarized in Exhibit 45.

**The Formation of Medici**

5. I have observed the record industry change dramatically over the last 20+ years. Some of the changes such as the move from vinyl records of my youth to downloaded digital audio/visual performances viewable on high definition television ("HDTV") I believe are common knowledge.

6. A change that I have observed and I believe is not so widely known is that over the last ten years or so, major labels such as Sony or Warner have diminished significantly the number of new performances of classical music they record and have also limited the number of artists whose current performances are recorded.

7. As a result, artists like me have been forced to create our own record labels on which we record and then offer for sale our own performances.

8. For example, the great American pianist Earl Wild formed the label "Ivory Classics."

9. As the Clavier article suggests, a significant portion of my annual income is derived from concert performances around the world. Much like the university professor needs to "publish or perish," the concert pianist needs to continually record performances of classical music in order to remain in demand for concert performances.

10. Accordingly, as opportunities to record with major labels diminished, my business and life partner, Julie Kedersha, and I undertook to create and sell recordings of my musical performances.

11. Our first label was "Monarch." After releasing six recordings on the Monarch label, we learned that the popular singer Mariah Carey claimed rights in the Monarch trademark.

12. Rather than litigate with Ms. Carey, we decided to adopt a new label.

13. We engaged trademark counsel to search for a viable name for our new label. Immediately obvious trademarks, such as "Rose Records," were found not to be available.

14. After conducting through trademark counsel a thorough world-wide search for a new name, we settled upon the Medici mark.

15. The first recording released in the United States on the Medici label was released on or about September 30, 2003 and was entitled "Jerome Rose Plays Schubert – The Three Posthumous Sonatas and Wanderer Fantasie," Catalog Number: M30072.

**World Wide Distribution of the Medici Label**

16. That recording (and subsequent recordings) on my Medici label was released literally around the world.

17. As Mr. Walston acknowledged during his deposition is common, Medici uses various record distributors throughout the world. Transcript p. 47, ll. 3-19. Again as Mr. Walston correctly observed, some distributors are more effective in some parts of the world as compared to other parts. *Id.*

18. Recordings on my Medici label are distributed around the world by the following distributors: Qualiton Imports Ltd., VAI (Video Artists International), Metronome Distribution, Musikwelt and Codaex.

19. Recordings on my Medici label can be purchased on the following websites: www.ArkivMusic.com, www.BarnesandNoble.com, www.amazon.com, www.qualiton.com, www.vaimusic.com, and www.tower.com in addition to a number of European websites.

20. Recordings on my Medici label can be "downloaded" from the following websites: www.napster.com, www.itunes.com, www.emusic.com, www.theorchard.com, www.rhapsody.com, www.medianet.com, www.realnetworks.com, www.ruckus.com, www.musicnet.com, www.virgin.com; Ztango/Verizon and Amazon Digital Services, Inc.

**Medici's Discovery of Defendants' Use of Infringing Medici Marks**

21. In or around June 2007, I received a telephone call from a Mr. John Pattrick, who introduced himself as the Producer of Medici Masters CDs. He stated that in his opinion, his use of the Medici name was non-infringing because he was not presenting recordings of solo pianists.

22. On or about August 3, 2007, I received an e-mail from one Heiko Burkardsmaier, who described himself as General Counsel of "Euroarts Medien GmbH" inquiring whether I had "any objection" to the use of "Medici Masters" and "Medici Arts"

trademarks in the United States on DVD's, CD's or other media containing audio and/or audiovisual recordings of classical music. He told me that I could find out more about "our company" by visiting www.euroarts.com. *See* Exh. 46.

23. At the time I received this e-mail I was on a concert tour in Austria and wanted to have the advice of counsel before responding.

24. Ms. Kedersha sent Mr. Burkardsmaier an e-mail advising him of my immediate unavailability. *Id.*

25. Mr. Burkardsmaier's e-mail was the first solid indication that I had that somebody was considering infringing – or perhaps already had infringed -- Medici's trademark.

26. Accordingly, we did some internet research. The first mention we found of any of the defendants was a press release stating "Medici Group acquires the shares of ITFC Ltd. from the ITV1 regional license holders. Exh. 22.

27. Before responding to Mr. Burkardsmaier we also found the website www.mediciarts.co.uk. On that website recordings bearing the "Medici Masters" trademark are being sold. *See* Exh. 47.

28. We therefore concluded that Mr. Burkardsmaier's inquiry on behalf of Defendant Euroarts Medien GmbH as to future use of infringing marks was intended to validate *nunc pro tunc* the past infringements of its affiliates.

29. When I returned to the United States I engaged Medici's present attorneys.

30. By letter dated October 1, 2007, Medici Counsel's advised Mr. Burkardsmaier of Medici's objection to EuroArts proposed future infringement of Medici's trademark and further advised him of Medici's objections to past infringements by an EuroArts affiliate, Defendant Medici Arts Limited U.K. Exh. 48.

31.     This action and settlement discussions followed.

**Medici Group LLC's Launch of a New Label and www.medici.tv
During the Pendency of This Action**

32.     While these settlement discussions were ongoing, Defendants exploitation of the Medici mark in association with performances of classical music sky rocketed.

33.     During the pendency of this action Medici Group LLC and Mr. Walston have publicly characterized the Medici Group family of companies as a "new label" and one company with one voice. Indeed, in the May issue of "Gramophone" magazine there appeared a full page advertisement that says:

> The newly founded **label** Medici Arts is proud to present a selection of its first class new DVD releases, produced by Euro Arts and Ideale Audience, now promoted through Medici Arts.

Emphasis added. The Court should note the use of "Euro Arts" versus "EuroArts." Exh. 49. *See* Exhs. 25, 23, 24, and 39 all using the one word "EuroArts" and all bearing a 2007 copyright notice in the name of "Medici Group." *See also* Exhs. 29 and 38.

34.     While Mr. Walston testified that the decision to apply the "Medici Masters" and "Medici Arts" trademarks to recordings was made by Europeans whom he characterized as in charge of day-to-day operations of "subsidiaries," the following facts belie the truthfulness of that testimony, namely, (a) Mr. Walston and Mr. Walston alone formed Medici Group LLC and thus necessarily chose its name and (b) Mr. Walston and Medici Group LLC make all significant financial decisions involving all of what is publicly characterized as the "Medici Group family of companies."

35.     In prior correspondence with the Court, I have perceived thinly veiled contempt on the part of Defense Counsel, which has inquired whether my Medici label is something of mere vanity. (*See* Exh. 32) ("we have no idea whether plaintiff has sold 3 copies

of his own works, or 3,000.") While it is true that my Medici label offers only solo piano performances by me, solo performances by other pianists are offered under both the "Medici Masters" and "Medici Arts" trademarks. While this action has been pending, there have been a number of new releases of solo piano performances under the "Medici Arts" label, which, as noted above, has been characterized as the "newly founded label Medici Arts." They include (a) Medici Arts DVD, Shostakovich Preludes & Fugues, Tatiana Nikolayeva, pianist, release date June 1, 2008, Catalogue Number Medici Arts 3085248; (b) Medici Arts DVD "Arturo Benedetti Michelangeli in Recital," release date June 1, 2008, Catalogue Number Medici Arts 3052318; and (c) Medici Arts DVD, "Sviatislav Richter in Recital," release date June 1, 2008, Catalogue Number Medici Arts 3085208.

36. Defendants have stipulated to the sale to New York City residents of "Medici Masters" and "Medici Arts" trademarked recordings both via the internet and in "brick and mortar" stores located in New York City. Exhs. 3, 5, 7, 10, 12, 15, 19.

37. Perhaps the most significant of these recordings is the recording of the New York Philharmonic Orchestra in North Korea. Exh. 18. That "project," approved by Mr. Walston, was the result of the relationship between the New York Philharmonic and the "Vice-Chairman of Medici Group LLC" and a director of Medici Arts, B.V., Mr. Thomas Baer, who is given credit in the materials that accompany this DVD, which is available for sale, among other places, in the City of New York. Transcript p. 98, l. 9 – p. 99, l. 4; 9. 106, ll. 2-10; Exh. 20.

38. Mr. Walston personally approved this historic project after having been presented with "a budget summary of what it was going to cost, the income we could expect to derive from it and if it met – which it met our criteria." Walston, p. 80, lines 2-10. If Mr.

Walston had not personally approved this project, the infringement of the Medici mark represented by Exhibits 18 and 20 simply would not exist.

39. I think that it is important to point out that a portion of the income Mr. Walston determined "we would expect to derive from" this recording was necessarily income derived from internet sales to New York residents.

40. I also respectfully suggest that it is significant that among the things Mr. Walston had to decide was whether the project met the "criteria" of the Group.

41. It is therefore indisputable that any hardship that may be imposed upon Defendants as the consequence of enforcing Medici's rights in its mark as the senior user thereof is the consequence of Defendants ignoring Medici's response to Mr. Burkardsmaier's inquiry and proceeding to attempt to appropriate Medici's mark notwithstanding its first use around the world by my company.

42. In the interest of brevity, I do not repeat here the inconsistencies between the admissions of the Medici Group companies in public record (largely on the internet and frequently copyrighted in the name of Medici Group LLC) and Mr. Walston's testimony that is addressed in the accompanying memorandum of law. I understand that the Court can take judicial notice of the content of those following websites, which I respectfully ask that it do:

    a. www.medicimedia.com

    b. www.euroarts.com

    c. www.medici.tv

    d. www.mediciarts.co.uk

43. In respect of the www.medici.tv website, I think it relevant to mention that my performances on the Medici Classics label have been frequently aired on television on the

Classic Arts Showcase program. Information about that television program generally is available at www.classicartsshowcase.org.

44. Mr. Walston testified that there were six other members of Medici Group, LLC, including one Michael Steinhardt. Walston, p. 10, ll.6-11.

45. I noted from an internet search that, like Vice Chairman Thomas Baer, Mr. Steinhardt has maintained an office at 650 Madison Avenue, New York, New York. *See* Exh. 50 (letter from Mr. Steinhardt to then President Clinton in support of a pardon for Marc Rich on letterhead bearing 650 Madison Avenue address).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 2, 2008.

_____
Jerome Rose