Daniel J. Kornstein (DK-3264)
Daniel J. Sparaco (DS-3549)
KORNSTEIN VEISZ WEXLER & POLLARD, LLP
757 Third Avenue
New York, New York 10017
(212) 418-8600
Attorneys for Defendants Medici Group LLC
and Robert T. Walston

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

MEDICI CLASSICS PRODUCTIONS, LLC,    :

               Plaintiff,    :    07 Civ. 9938 (RJH)

    -against-    :    ECF Case

MEDICI GROUP LLC, MEDICI GROUP    :
EUROARTS, ROBERT T. WALSTON and
JOHN DOES Nos. 1 to 10,    :

               Defendants.    :

------------------------------------X


REPLY MEMORANDUM OF LAW BY DEFENDANTS MEDICI GROUP LLC
AND ROBERT T. WALSTON IN FURTHER SUPPORT OF MOTION TO
<u>DISMISS FOR LACK OF PERSONAL JURISDICTION</u>

    Plaintiff's opposition concerns entities who are <u>not</u> the moving defendants, products <u>not sold</u> by the moving defendants, websites <u>not operated</u> by the moving defendants, and theories of liability <u>not relevant</u> to any of our jurisdiction arguments.

    Unable -- even after deposing Walston -- to explain how either Walston or Medici Group ("Group") has any New York ties, plaintiff futilely focuses on the activities of Group's remote European subsidiaries and an individual, Baer, who is an occasional consultant to one of them. But these entities and Baer, even if

they have New York ties – hardly a settled issue – do not subject Group and Walston to jurisdiction here.

**Testimony and Exhibits Support Our Motion**.  At his May 21 deposition, Walston reiterated that he does not live or work here and that Group has no New York office.  May 21, 2008 Deposition of Robert Walston ("Walston Depo."), 10:20-11:11.  He further testified that Group does no business here.  It is merely a holding company with "no operations, no employees, no assets other than the ownership of the subsidiaries," Id., 26:8-11.

Plaintiff's Exhibit 33 shows just how remote is Group's relationship to any of the alleged wrongs.  That organizational chart shows that Group owns another holding company, Medici Arts, LLC, which in turn owns Medici Arts, B.V., another holding company that is, moreover, Netherlands-based.  Arts B.V., in turn, owns EuroArts Music International (Germany), Ideale Audience (France), and Medici Arts, Ltd. (U.K.).  Pl. Ex. 33.

It is these companies -- operating at four corporate levels away from Group -- that are involved in "content production and distribution," Walston Depo., 16:22-17:7, 25:7-8, and that own, license, and produce classical music products.  Id., 50-53.

Plaintiff's focus on the Philharmonic's North Korea concert is misplaced, as Walston and Group had essentially no involvement with that event.  EuroArts Music International produced the recording of that concert from start to finish.  See, e.g., Opposition Brief ("Opp. Br.") at 8; Pl. Ex. 18, 20; cf. Walston Depo., 31-34.

2

Equally puzzling is plaintiff's focus on Thomas Baer. Walston described Baer as an "occasional consultant," not an employee. And as Baer's accompanying Declaration shows, any consulting he does for Medici entities is for EuroArts Music International. He does no work for Group nor acts on its behalf. June 12 Declaration of Thomas Baer, ¶¶ 2, 4 ("Baer Decl."), Walston Depo., 61:25-62:10, 98:23-99:4.

The activities of EuroArts and Baer have no relevance here.

**Plaintiff Cannot Clear Higher, Post-Discovery Standard**. Having deposed Walston, it is harder for plaintiff to defeat our motion. Its *prima facie* showing must be factually supported and cannot rely on conclusory statements. First Capital Asset Management, Inc. v. Brickellbush, Inc., 218 F. Supp. 2d 369, 388 (S.D.N.Y. 2002).[1]

But plaintiff relies solely on "conclusory statements" that are controverted by Walston's sworn testimony, which, moreover, plaintiff sorely mischaracterizes. See, e.g., Opp. Br. at 1 (Walston "obviously chose" the Medici name and "obviously had a business plan when he formed Group"); cf. Walston Depo., 69:21-70:11 ("European management team" chose name).

Similarly, plaintiff repeatedly states, without support, that Baer is "'Vice Chairman' of [Medici] Group," see, e.g., Opp. Br. at 4, and tries to suggest that Baer works on Group's behalf. Neither

---

[1] See also Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990); Yellow Page Solutions, Inc. v. Bell Atlantic Yellow Pages Co., No. 00 Civ. 5663, 2001 WL 1468168 (S.D.N.Y. Nov. 19, 2001).

3

is true. Baer is not Vice Chairman of Group, but of Medici Arts, LLC, which is not a moving defendant. See Pl. Ex. 34; Baer Decl. And Walston was clear that Baer's activities are on behalf of EuroArts Music International, not Group. Walston Depo., 61:17-9, 62:7-10. Plaintiff has no proof to the contrary.

Plaintiff's supposed evidence of Walston's and Group's New York ties are actually misstatements or irrelevant:

| "Fact" to "Support" Jurisdiction (Opp. Br. at 8-9) | Reality |
|---|---|
| "Group's Vice Chairman, Mr. Baer . . . work[s] at 650 Madison Avenue" | False. Baer is not Vice Chairman of "Group," but of Medici Arts LLC. (Pl. Ex. 34; Baer Decl.) And his "work" is not for Group or on Group's behalf. Id.[2] |
| "Group has issued a press release referring to its New York Office" | False. The press release describes a New York office of Medici Arts LLC, not Group (see Pl. Ex. 22).[3] |

---

[2] Walston testified that, in any event, "there is no such corporate office [i.e., Vice Chairman] in an LLC" and that Baer's title was "ceremonial," and was "specifically chosen because it did not represent any operational or managerial role in the company whatsoever," Walston Depo., 40:10-11, 40:16-17, 41:10, 41:22-25. See also id., 40:25-41:4 (explaining that Baer's consultant role is on behalf of other entities, not Group).

[3] Page 3 of the press release reads: "Medici Arts, with offices in London, Paris, Berlin, Leipzig, Los Angeles and New York is the premier owner, producer and distributor of classical music and arts audiovisual programming . . . ." Pl. Ex. 22 (emphasis added). Walston further clarified that it is not even Medici Arts, LLC or B.V. that has offices in New York -- only their subsidiaries do. See Walston Depo., 16:22-17:7.

4

| | |
|---|---|
| "The New York Philharmonic is headquartered in New York" | Perhaps, but any relevant Philharmonic transactions were with EuroArts, not Group. Walston Depo., 31-34 |
| The North Korea concert DVD "credits Vice Chairman Baer as one of two 'Executive Producers'" | Perhaps, but Baer was not acting on behalf of Group. Walston Depo., 61:25-62:10, 98:23-99:4 |
| The written insert in the North Korea concert DVD "refers to 'EuroArts Music International (a Medici Arts Company)'" | Perhaps, but EuroArts is not Group, and is four levels down the organizational chain. |
| "Walston is the sole member of [Medici] Arts [LLC]" | Perhaps, but plaintiff asserts no New York ties of Medici Arts, LLC (nor could he, as it is a foreign holding company with no operations). Walston Depo., 26:8-11 |
| "the [North Korea] performance was available on www.medici.tv" | Perhaps, but Group and Walston had no involvement with that website. Walston Depo., 48:23-25 |
| The DVD "is being sold via the internet" | Perhaps, but not by Group, which does not distribute the DVD or any other product. Walston Depo., 26:8-11 |

These distortions and misstatements cannot thwart dismissal.

**Subsidiaries Do Not Confer Jurisdiction**.  Even as described by plaintiff, it is Group's foreign subsidiaries, not Group itself, that are involved in the activities from which plaintiff's claims arise: the production and distribution of classical music merchandise.  Opp. Br. at 7.  And even if these foreign subsidiaries could be deemed to do business in New York, which is hardly clear, they do not advance plaintiff's efforts to obtain jurisdiction over Group.  For plaintiff has not shown that these

5

entities' acts "can be imputed to the foreign parent corporation," Irwin v. ZDF Enterprises GmbH, No. 04 Civ. 8027, 2006 WL 374960, *8, (S.D.N.Y. Feb. 16, 2006) or that "'the activities of the parent show a disregard for the separate corporate existence of the subsidiary,'" id., quoting Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F.2d 117, 120 (2d Cir. 1984). Plaintiff alleges no such thing.[4]

Plaintiff suggests (Opp. Br. at 10) that jurisdiction over subsidiaries automatically translates into jurisdiction over a parent because a parent is sometimes liable for its subsidiaries' acts. But this is irrelevant. Liability is a wholly separate issue from jurisdiction, and is not before the Court now.

Plaintiff cannot use Group's subsidiaries' New York ties (if any) as grounds for jurisdiction on Group. It has not shown that the subsidiaries financially depend on Group, that Group interferes in the selection and assignment of the subsidiaries' executive personnel or fails to observe corporate formalities, or that Group exercises undue control over their marketing and operational policies. Beech Aircraft, 751 F.2d at 120-122.

"Only day to day control by the parent 'so complete that the subsidiary is, in fact, merely a department of the parent,' will constitute the requisite control" for purposes of obtaining jurisdiction over a parent via its subsidiary. Bellomo v.

---

[4]Plaintiff claims that this standard is inapplicable to this Lanham Act case (Opp. Br. at 10) but cites no authority for this.

6

Pennsylvania Life Co., 488 F. Supp. 744, 745 (S.D.N.Y. 1980) (parent does not subject itself to jurisdiction merely by holding affiliate out to the public as a unitary enterprise) (citations omitted).

Neither Walston nor Group controls the subsidiaries. Walston has "spent zero time on the day-to-day operational management of the business," Walston Depo., 60:3-5, and had nothing to do with choosing the "Medici" name:

> you would have to ask the guys in Germany and France who deal with this day in, day out as to their intention in using the name. For me, again, as a shareholder of the business, those decisions are left to the operating management and how they position Medici and the Web site.

Walston Depo., 57:4-11; 69:21-70:11 (Europeans chose Medici name).

The websites' operation and the development/sale/marketing of the Philharmonic DVD were activities in which neither Group nor Walston were involved. The websites, including medici.tv, are operated by the subsidiaries alone. See Pl. Ex. 21; Walston Depo., 48:23-25 ("Q. Which company launched this Web site? A. Ideale Audience"). The site's content is owned and/or produced by EuroArts Music International, Ideale Audience, and Medici Arts Limited (U.K.). Walston Depo., 49-52.[5]

---

[5] None of plaintiff's internet sales cases holds that jurisdiction exists over a parent due to a subsidiary's website sales. Every case involves a defendant without subsidiaries that allegedly directly sold the infringing material at issue and is, therefore, irrelevant. See Pearson Education, Inc. v. Shi, 525 F. Supp. 2d 551 (S.D.N.Y. 2007); New Angle Pet Products, Inc. v. MacWillie's Golf Products, Inc., No. 06-CV-1171, 2007 WL 1871345 (E.D.N.Y. June 28, 2007); Philip Morris USA Inc. v. Veles Ltd., No. 06 CV 2988, 2007 WL 725412 (S.D.N.Y. Mar. 12, 2007).

The DVD "was produced by EuroArts Music International," id., 29:25-26:1, which "is responsible for all of the content," 35:16-17. See also id., 33:7-9 ("nothing happens outside of EuroArts Music International on this project").

Walston testified that he and Group are mere shareholders:

> We are just shareholders.  We just own interest in the companies that we acquire.  We hope they  do well.  We hope they execute their business plan.  But we are not involved in their process of creating content or delivering content.

Walston Depo., 28:24-29:6. But "normal shareholder involvement in the operations of their subsidiaries" does not "render[] those subsidiaries 'mere departments' for jurisdictional purposes." In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000, 230 F. Supp. 2d 403, 410 (S.D.N.Y. 2002).

That Walston has, at times, approved certain financing transactions with respect to the subsidiaries, does not advance plaintiff's cause either. See Saraceno v. S.C. Johnson & Son, Inc., 83 F.R.D. 65 (S.D.N.Y. 1979) (no jurisdiction despite parent's key role in initial financing of the subsidiary, approval of subsidiary's major expenditures, setting price guidelines, determining its dividend). Plaintiff's effort to secure jurisdiction over Group via its foreign subsidiaries thus fails.

**Diversity Analysis Irrelevant**. Plaintiff tries to elide these jurisdictional problems by claiming that Group, "at least for diversity purposes, [is] a citizen of the State of New York." Opp. Br. at 8. Perhaps, but the diversity analysis is irrelevant here.

N.A.A.C.P. v. Acusport Corp., 210 F.R.D. 446 (E.D.N.Y. 2002).

**No Long Arm Jurisdiction**. Plaintiff cannot benefit from CPLR 302(a)(3)(ii), as it cannot show any tortious act or foreseeable New York consequences by the moving defendants.

No Act. The alleged torts derive from the North Korea concert recording. But Walston and Group do not produce, manufacture, or distribute this product (nor any other). Whether or not the recording is available in New York, no act by the moving defendants made this possible, or could have. Walston Depo., 26:8-11, 31-34.

That the DVD allegedly "would not exist 'but for' the conduct of Walston/Group" (Opp. Br. at 9, 15) is not enough: "the New York statute cannot mean 'but for' cause when it refers to acts causing injury within the state. If it did, the New York courts would be deluged with issues of remote, tangential and inconsequential causes of injuries suffered here." Art Leather Mfg. Co., Inc. v. Albumx Corp., 888 F. Supp. 565, 568 (S.D.N.Y. 1995).

Defendants have essentially no ties to the alleged wrongs. Their role was to assess, from a financial perspective, whether EuroArts should pursue the project, well before any DVD was created or marketed. Walston Depo., 106:5-10 ("My role, again, is financial. So they presented to me a budget summary of what it was going to cost, the income that we would expect to derive . . . .").

All aspects of the project were done at the subsidiary level:

> EuroArts Music International in Germany . . . put up the funding to pay for the camera crews and the rights from the New York Philharmonic . . . . [I]t was their staff and employees that went to Pyongyang to film the

9

concert. And EuroArts Music International has the agreement with Naxos. . . to distribute this asset.

Walston Depo., 31:7-21. EuroArts "captured the program" and had "the responsibility to edit it and to complete the program for the DVD format." Walston Depo., 32:16, 32:22-24. And "EuroArts Music International determines how many copies of this they want to make." Walston Depo., 34:3-5.

<u>No Foreseeability</u>. When Walston and Group were involved, they could not have foreseen any New York effects. The DVD was not even yet produced, much less available here. Besides, "foreseeability must be coupled with evidence of a purposeful New York affiliation, for example, a discernible effort to directly or indirectly serve the New York market." <u>Schaadt v. T.W. Kutter, Inc.</u>, 169 A.D.2d 969, 970, 564 N.Y.S.2d 865, 866 (3d Dep't 1991).

## Conclusion

For the reasons given here and in our main brief, the motion to dismiss for lack of personal jurisdiction should be granted.

Dated:   New York, N.Y.
         June 12, 2008

Respectfully submitted,

KORNSTEIN VEISZ WEXLER
   & POLLARD, LLP

By: _____
    Daniel J. Sparaco (DS-3549)
757 Third Avenue
New York, New York 10017
(212) 418-8600

Attorneys for Defendants Medici Group, LLC and Robert T. Walston

Of Counsel:
   Ina R. Bort

10