UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MEDICI CLASSICS PRODUCTIONS LLC,

                             Plaintiff,                    07 Civ. 9938 (RJH)

          - against -

MEDICI GROUP LLC, et al.,                **MEMORANDUM
OPINION & ORDER**

                             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Richard J. Holwell, District Judge:

      This is a suit between a noted classical pianist on the one hand and a classical

music production company on the other.  It arises out of the fact that both use their trade

names to pay homage to the Medici family, the famous Italian renaissance patrons of the

arts.  Plaintiff Medici Classics Productions ("Medici Classics") is the limited liability

company that Jerome Rose, a classical pianist, created primarily to market his own

recordings.  Plaintiff has federally registered the trademark Medici Classics Productions,

and releases CDs and DVDs bearing that mark.  Defendants (collectively, "Medici Arts")

have various roles[1] in the distribution of classical music under the labels "Medici Arts"

and "Medici Masters".  Plaintiff has brought this action pursuant to the Lanham Act and

New York state law seeking to enjoin the defendants from what it considers to be the

infringing and unfair use of its trademark, and defendants now move for summary

---

[1] Because the Court finds that summary judgment is appropriate for all defendants, it need not
stray into the thicket of determining precisely what role each defendant plays in the use of the
allegedly infringing marks.

judgment disposing of the case.  For the reasons that follow, defendants' motion for summary judgment is granted and the case is dismissed.


## BACKGROUND

The undisputed facts are as follows.  Jerome Rose is an accomplished concert pianist, (Rose Dec. ¶ 3.), and in 2003 he created Medici Classics Productions at least in part to sell recordings of his performances.  (Rose Decl. ¶¶ 7, 10, 15.)  Through that label he has released a number of classical piano recordings, which he distributes through retail distributors, online outlets such as amazon.com and BarnesandNoble.com, and internet direct download services.  (*Id.* ¶¶ 17-20).  Plaintiff paints this as a "classic case of David vs. Goliath," and concedes that its sales have always been modest.  (494 copies of five CDs and 335 copies of one DVD, 56.1 ¶ 3)  To graphically represent the label, a mark is placed in the corner of each release that bears the words "Medici Classics Productions" beneath an image of a griffin.  (E.g. Bainton Decl. Ex. 5.)  A copy of that mark is appended to this opinion.  To protect its mark, plaintiff filed for federal registration of "Medici Classics Productions," which registration was eventually awarded on January 22, 2008.  United States Trademark Reg. No. 3,372,195.

The defendants produce and market CDs, DVDs, and documentary films, as well as audiovisual content for broadcast over the internet.  Beginning in May 2007 they have used the name "Medici Arts" in releases of classical music DVDs, such as the 2008 DVD and Blu-ray release of the New York Philharmonic's historic concert in Pyongyang, North Korea. (56.1 ¶¶ 58-61.)  Medici Arts has had significantly more sales success than Medici Classics: it sold over 42,000 DVDs from May 2007 through September 2008

through retail, internet, and catalog distribution.  Defendants also offer classical music videos and live webcasts on their own internet site, medici.tv.  Although defendants use a variety of logos to represent their label, including some with the phrase "Medici Masters" and a number of different designs, they all have a similar format with the word "medici" in small-caps beneath an arch.  A copy of some representative marks are appended to this opinion.

In June 2007, plaintiff became aware of defendants and their use of the allegedly infringing marks through a phone call from an individual representing himself as a producer of defendants' "Medici Masters."  (Rose Decl. ¶ 21.)  Discussions between the parties followed, were unsuccessful, and plaintiff filed this suit on November 9, 2007. (*Id.* ¶¶ 22-32.)  After conducting some discovery, on September 19, 2008 plaintiff filed a motion for a preliminary injunction to enjoin one of the defendant's use of the allegedly infringing marks **[49]**.  The Court held an evidentiary hearing on the motion on October 23, 2008, and on December 22, 2008 issued a written decision denying plaintiff's motion for a preliminary injunction **[87]**.  The parties continued to conduct discovery and on March 5, 2009 agreed that discovery was complete **[91]**.

There are four factual disputes relevant to the disposition of this case at the summary judgment stage.[2,3]  First, whether defendant continues to sell six titles under the name "Monarch Classics" or has re-branded those titles as Medici Classics.  (56.1 ¶ 24.)

---

[2] Some other factual disputes, dealing mostly with the ownership and internal operations of Medici Group LLC and the other corporate entities, are inconsequential to the resolution of the infringement issue.

[3] Although plaintiff does not dispute that its mark "is displayed next to a drawing of a griffin, and is presented in all upper case type on a black background," (56.1 ¶ 25), plaintiff also adds that its registered trademark is for "Medici Classics Productions" "without claim to any particular font, style, size or color." (56.1 Resp. ¶ 25.)  The legal implications of this distinction are addressed by the Court in the discussion that follows.

Second, when Medici Classics began using the "Medici Classics Productions" label on advertisements, and how much it has invested in that label in particular.  (56.1 ¶ 35-38 (after the commencement of this litigation); 56.1 Resp. ¶ 35-38 (as early as September 2003).)  Third, how defendants chose the "Medici Arts" and "Medici Masters" names and whether they were aware of plaintiff's trademark at the time they began to market their products.  (56.1 ¶ 42-44; 56.1 Resp. ¶ 42-44.)  Fourth and finally, the extent to which Medici Classics has released records of artists other than Jerome Rose, and whether it intends to do so in the future.  (56.1 Resp. ¶ 13.)  As mandated by Rule 56, the Court resolves these factual disputes in plaintiff's favor for the purposes of deciding defendants' motion for summary judgment.  Even doing so, the Court finds that summary judgment for defendants is appropriate.

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c) summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "The plain language of Rule 56(c) mandates the entry of summary judgment … against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986).  Parties moving for summary judgment—in this case defendants Medici Arts—may discharge their burden "by showing—that is, pointing out

to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Federal Rule of Civil Procedure 56(e) requires that a party opposing summary judgment "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e).  This requirement has particular relevance when a party's responsive documents are long on speculation and short on specific facts.  "[S]peculation alone is insufficient to defeat a motion for summary judgment." *McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 215 n. 4 (2d Cir. 2006).  "The law is well established that conclusory statements, conjecture, or speculation are inadequate to defeat a motion for summary judgment." *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 85 (2d Cir. 2005).

Although the non-moving party may not rely merely on speculation, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-289, 88 S.Ct. 1575 (1968)).  In determining whether a genuine issue of fact exists, the Court is required to view the facts in the light most favorable to the nonmoving party and to make all reasonable inferences in that party's favor.  *E.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**DISCUSSION**

**A. Trademark Infringement**

Plaintiff has sued defendant for trademark infringement under the federal trademark law, the Lanham Act.  "Any person who shall, without the consent of the registrant…use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant."  15 U.S.C. § 1114(1)(a).  There are two components of a claim under this provision.  The claimant must show that "it has a valid mark entitled to protection *and* that the defendant's use of it is likely to cause confusion."  *Gruner + Jahr USA Publishing v. Meredith Corp.*, 991 F.2d 1072, 1075 (2d Cir. 1993) (emphasis added); *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (2d Cir. 2003) (citing *Sports Auth., Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 960 (2d Cir. 1996)). The parties do not seriously dispute whether plaintiff's mark is entitled to protection, so this case turns on whether defendants' use is likely to cause confusion.

Defendants' use is likely to cause confusion if "numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of defendant's mark."  *Cadbury Beverages v. Cott Corp.*, 73 F.3d 474, 477-78 (2d Cir. 1996).  There must be a "probability of confusion, not a mere possibility."  *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 269 F.3d 114, 121 (2d Cir. 2001).  "This standard does not change on summary judgment.  The fact that on summary judgment the evidence must be construed in a light

favorable to the non-moving party does not modify the standard itself, which requires a showing of a probability, or likelihood, of confusion." *Playtex Prods., Inc. v. Georgia-Pacific Corp.*, 390 F.3d 158,  161-62 (2d Cir. 2004) (Sotomayor. C.J.) (citing *Nora Beverages*, 269 F.3d 114 at 121).

To determine the likelihood of confusion, courts in this circuit apply the familiar eight factor analysis set forth by Judge Friendly in *Polaroid Corp. v. Polarad Elcs. Corp.*, 287 F.2d 492 (2d Cir. 1961).  The factors are: (1) the strength of the mark; (2) the degree of similarity between the two marks; (3) the competitive proximity of the products; (4) the likelihood that the prior owner will bridge the gap between the products; (5) actual confusion; (6) the defendant's good faith in adopting its own mark; (7) the quality of defendant's product; and (8) the sophistication of the buyers.  *Id.* at 495.  "No single factor is dispositive, nor is a court limited to consideration of only these factors." *Brennan's, Inc. v. Brennan's Rest., L.L.C.*, 360 F.3d 125, 130 (2d Cir. 2004).  "[N]or should a court treat the inquiry as a mechanical process by which the party with the greatest number of factors wins.  Instead, the court should focus on the ultimate question of whether consumers are likely to be confused."  *Playtex*, 390 F.3d at 162.

The Second Circuit has held that "summary judgment in a trademark action may be appropriate in certain circumstances, where the undisputed evidence would lead only to one conclusion as to whether confusion is likely."  *Cadbury Beverages v. Cott Corp.*, 73 F.3d 474, 478 (2d Cir. 1996); *Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 746 F.2d 112, 115 (2d Cir. 1984) (affirming district court's grant of summary judgment with respect to trademark infringement because plaintiff "failed to raise a question of fact on the issue of likelihood of consumer confusion").   "Where the predicate facts are beyond

dispute, the proper balancing of [the *Polaroid* factors] is considered a question of law."

*Playtex*, 390 F.3d at 162 (2d Cir. 2004) (citing *Nabisco, Inc. v. Warner-Lambert Co.*, 220

F.3d 43, 46 (2d Cir. 2000); *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d

867, 876 (2d Cir. 1986) (application of undisputed facts to the issue of likelihood of

confusion is a legal issue appropriately decided on a motion for summary judgment);

*Advance Magazine Publishers, Inc. v. Norris*, No. 04 Civ. 7877 (RJS), 2008 WL 5336468

(S.D.N.Y. Dec. 15, 2008) (summary judgment granted on trademark infringement

counterclaims); *Lemme v. National Broadcasting Co.*, 472 F. Supp. 2d 433, 447

(E.D.N.Y. 2007) (summary judgment appropriate where no rational trier of fact could

find likelihood of consumer confusion); *Rush Industries, Inc. v. Garnier LLC*, 496 F.

Supp. 2d 220, 224 (E.D.N.Y. 2007) ("Where key facts regarding [the element of

likelihood of confusion] are clear and beyond dispute, it is appropriate to decide the

matter in the context of a motion for summary judgment.")  Accordingly, the Court will

first examine each of the *Polaroid* factors, taking the evidence in the light most favorable

to plaintiff, and then balance them to determine whether a genuine issue of material fact

has been raised about the likelihood of consumer confusion.  *See id*. at 167.

> **(1) The Strength of the Mark**

The first of the *Polaroid* factors is the strength of the trademark, which is its

"tendency to identify the goods sold under the mark as emanating from a particular,

although possibly anonymous, source."  *McGregor-Doniger, Inc. v. Drizzle, Inc.*, 599

F.2d 1126, 1131 (2d Cir. 1979).  This necessarily encompasses two distinct concepts: the

marks' "inherent distinctiveness," and its "acquired distinctiveness."  *Playtex*, 390 F.3d at

163.  As for the former, courts classify a mark in one of four categories in increasing

order of inherent distinctiveness: generic, descriptive, suggestive, and arbitrary or fanciful. *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (2d Cir.1976); *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 744 (2d Cir. 1998).  Acquired distinctiveness, on the other hand, "refers to the recognition plaintiff's mark has earned in the marketplace as a designator of plaintiff's goods or services," because "when there is a widespread recognition of a mark among consumers, there is an increased likelihood that consumers will assume it identifies the previously familiar user, and therefore an increased likelihood of consumer confusion if the new user is in fact not related to the first." *Playtex*, 390 F.3d at 163 (citations and quotation marks omitted).

In examining inherent distinctiveness at the preliminary injunction stage, this Court found that the mark "is properly categorized as suggestive…as the mark is not directly descriptive but suggests a quality or qualities of the product—here the suggestion of the Renaissance and patrons of the fine arts—that requires the use of imagination, thought, and perception." *Medici Classics Prods. v. Medici Group LLC*, 590 F. Supp. 2d 548, 551 (S.D.N.Y. 2009) (quoting *Star Indus. v. Bacardi & Co.*, 412 F.3d 373, 384-85 (2d Cir. 2005).  Neither party has indicated a disagreement with that determination, nor does the Court find reason to depart from its earlier holding.  Accordingly, plaintiff's mark is categorized as suggestive.

"Although a suggestive mark is entitled to registration without evidence of secondary meaning, suggestiveness is not necessarily dispositive of the issue of the strength of the mark….[I]n a given case whether the mark has acquired secondary meaning is a matter which may be relevant and probative and hence useful in determining the likelihood of confusion." *Lang v. Retirement Living Pub. Co., Inc.*, 949 F.2d 576,

581 (2d Cir. 1991) (concluding that district court did not err in deciding on summary judgment that registered, suggestive mark was nonetheless weak). It is therefore appropriate for the Court to evaluate the strength of plaintiff's mark by examining the degree to which the "Medici Classics Productions" mark tends to identify plaintiff's business in the public's eye. *See Id.*; *Sunenblick v. Harrell*, 895 F. Supp. 616, 626 (S.D.N.Y. 1995), *aff'd* 101 F.3d 684 (2d Cir. 1996).

In evaluating secondary meaning, courts typically examine six factors: (1) the senior user's advertising and promotional expenses; (2) consumer studies linking the name to the source; (3) the senior user's sales success; (4) third-party uses and attempts to plagiarize the mark; (5) length and exclusivity of the mark's use; and (6) unsolicited media coverage of the products at issue. *Thompson Med. Co., Inc. v. Pfizer Inc.*, 753 F.3d 208, 217 (2d Cir. 1985). As the Court noted at the preliminary injunction stage, none of these factors supports the conclusion that plaintiff's mark has gained distinction in the marketplace. On summary judgment, plaintiff simply does not present any evidence of acquired distinctiveness. Reviewing the factors, the Court again finds that none of them weigh in favor of acquired meaning: (1) plaintiff's advertising and promotional expenses have been relatively small (a maximum of $35,720 over five years, only part of which was spent on this mark in particular, Kornstein Decl. Ex. W); (2) there have been no consumer studies linking the mark to plaintiff in the mind of consumers; (3) plaintiff's sales are relatively low for musical releases (sales of CDs and DVDs since 2003 number in the hundreds, Korenstein Decl. Ex. V; 56.1 ¶ 3.); (4) the mark has been used by others in promoting classical music (i.e. Medici String Quartet and The Medici (a media company), *Id.* at Ex. X); (5) the mark has been in use by plaintiff since no earlier

than 2003 (56.1 Resp. ¶¶ 35-38); and (6) what media coverage there has been of plaintiff's releases is focused on praising Mr. Rose's performances themselves, not the label.

Although plaintiff admits that it lacks appreciable evidence of secondary meaning, it relies on its reading of *Cadbury Beverages, Inc. v. Cott Corp.* to argue that the mark is nonetheless strong solely because it has inherent distinctiveness. Plaintiff states that "given the Court's finding [that] the 'Medici' mark is inherently distinctive, 'the relative small size of [Medici's] advertising budget or sales volume will not diminish the strength of its valid mark, and the scope of protection accorded to that mark will not be narrowed by such evidence.'" (Pl. Mem. 9 (quoting *Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 479 (2d Cir. 1996).) However *Cadbury* dealt with a fanciful mark, not a suggestive one. The *Cadbury* Court found that "Cott" was "fanciful-that is, it is a term without any dictionary meaning," and noted that "a fanciful trademark is entitled to the most protection the Lanham Act can provide," and that "when a mark is registered and fanciful, the plaintiff has 'met its burden' on the question of strength" in concluding that the mark was strong. *Cadbury*, 73 F.3d at 479 (also noting sixty-year history of the mark's use to sell soda products). Plaintiff's mark, on the other hand, is suggestive, not fanciful. The Second Circuit explicitly rejected the argument that a suggestive mark is "strong without evidence of secondary meaning" in *Lang v. Retirement Living Pub. Co., Inc.*, 949 F.2d 576, 581 (suggestive mark was nonetheless weak); *see also W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567, 572-73 (2d Cir. 1993) (same); *Streetwise Maps. Inc. v. VanDam, Inc.*, 159 F.3d 739, 744 (2d Cir. 1998) ("Suggestiveness, however, does not necessarily determine the issue regarding the strength of the mark….[The Court]

must still consider the mark's distinctiveness in the marketplace.")  There is no evidence in the record that plaintiff's mark has acquired distinctiveness, and accordingly the Court concludes that the mark is weak.

### (2) The Degree of Similarity Between the Two Marks

This factor "looks to whether the similarity of the marks is likely to provoke confusion among prospective purchasers." *Lang*, 949 F.2d at 581.  This determination requires inquiry into both "(1) whether the similarity between the two marks is likely to cause confusion, and (2) what effect the similarity has upon prospective purchasers." *Strange Music, Inc. v. Strange Music, Inc.*, 326 F. Supp. 2d 481, 490.  Notwithstanding plaintiff's argument that its registered trademark is for "Medici Classics Productions" "without claim to any particular font, style, size or color," (56.1 Resp. ¶ 25), this inquiry requires looking not "just at the typewritten and aural similarity of the marks, but how they are presented in the marketplace." *The Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 962 (2d Cir. 1997).  "In making this determination, a court should look at the general impression created by the marks, taking into account all factors that potential purchasers will likely perceive and remember."  *Lang*, 949 F.2d at 581.

The only similarity between the marks is the use of the word "Medici."  Plaintiff's mark, "Medici Classics Productions" is written in upper-case and is always displayed alongside or below an evocative image of a griffin bearing its talons and spreading its wings for flight.  The griffin image is roughly twice the size of the words "MEDICI CLASSICS PRODUCTIONS," which each appear on a separate line in a logo that combines word, image, and color to create a striking impression of the renaissance.  That combination generally appears in one of the corners of the CD or DVD with text smaller

than the title of the composer, the work performed, or the attribution to "Jerome Rose." The defendants' logo, on the other hand, is quiet and modern: although there are several variations, in each the entirely lower-case word "medici" is combined with another word, such as "Legends" or "Arts," with a thin, colored arch resembling the curve of an umbrella drawn over the word "medici."

Although "at first blush, the use of the same word appears to weigh…in favor" of similarity, "the use of the same words…is far from dispositive." *E.g. Rush Industries, Inc. v. Garnier, LLC*, 496 F. Supp. 2d 220, 226 (E.D.N.Y. 2007) (finding marks "Long 'n Strong" and "Long & Strong" dissimilar on motion for summary judgment); *see also Strange Music*, 326 F. Supp. 2d at 491 (bat and snake logo accompanying mark "dwarfs the [] moniker that appears beneath it," and thus competing mark using same text which "lacks an accompanying picture" dissimilar on motion for preliminary injunction); *Lang*, 949 F.2d at 81 ("New Choices Press" and "New Choices for the Best Years" dissimilar because typeface differences, *inter alia*, led to significant difference in general impression conveyed to the public); *Playtex*, 390 F.3d at 164-165 ("Quilted Northern Moist-Ones" dissimilar from "Wet-Ones"). This is a case where the overall impression created by the marks is dissimilar despite the use of the same word. The marks use different typefaces and presentation to create different impressions: in the plaintiff's case, one of royalty and the renaissance, and in the defendant's case, one of modernity. The Court concludes on the basis of the undisputed facts that the marks are dissimilar and unlikely to cause confusion among prospective purchasers.

**(3) The Competitive Proximity of the Products, and**

**(4) the Likelihood that the Prior Owner Will Bridge the Gap Between the**

**Products**

These factors focus on the degree to which the products currently compete with

each other or are likely to compete with each other in the future.  Proximity in the

marketplace "focuses on whether the two products compete with each other" because

"[t]o the extent goods (or trade names) serve the same purpose [or] fall within the same

general class…the use of similar designations is more likely to cause confusion." *Lang*,

549 F.2d at 582 (citation omitted).  Bridging the gap "refers to the senior user's interest in

preserving avenues of expansion and entering into related fields." *Hormel Food Corp. v.

Jim Henson Prods., Inc.*, 73 F.3d 497, 504 (2d Cir. 1996) (quotations and citations

omitted).  At the preliminary injunction stage, the Court found that plaintiff's product "is

so uniquely circumscribed" and the evidence of intent to bridge the gap so "meager" that

the risk of competitive overlap now or in the future was low.  *Medici Classics Prods. v.

Medici Group LLC* , 590 F. Supp. 2d 548, 551, 555 (S.D.N.Y. 2009).  On summary

judgment, however, the Court must view the facts in the light most favorable to plaintiff.

There is some existing competitive overlap as a result of plaintiff's sale of a limited

number of Mr. Rose's classical recordings.  In addition, plaintiff has stated an intent to

expand its business beyond Mr. Rose's performances, and those statements are consistent

with Mr. Rose's comments in a 2003 magazine interview.  (Pl. Ex. 13.)  However, the

record contains no evidence that plaintiff has taken any steps towards embarking on such

expansion.  Giving plaintiff the benefit of every doubt, the Court finds that there is some

competitive proximity and some possibility of bridging the gap by expansion to non-Rose

recordings.  Accordingly, the Court finds that the competitive proximity and bridging the

gap factors weigh in plaintiff's favor, albeit weakly so.

### (5) Actual Confusion Between the Marks

Evidence of actual confusion "is not necessary to [a] trademark plaintiff's claim,

but 'its lack may under some circumstances be used against the plaintiff.'"  *Cadbury*

*Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 482 (2d Cir. 1996) (quoting *Hasbro, Inc. v.*

*Lanard Toys, Ltd.¸*858 F.2d 70, 78 (2d Cir. 1988)).  "A plaintiff asserting trademark

infringement typically offers evidence of consumer confusion by way of a well designed

consumer survey.  *Rush Industries, Inc. v. Garnier LLC*, 496 F. Supp. 2d 220, 227

(E.D.N.Y. 2007) (citing *Mattel, Inc. v. Azrak-Hamway, Int'l., Inc.*, 724 F.2d 357, 361 (2d

Cir. 1983).  Plaintiff does not present any consumer surveys demonstrating actual

confusion, and "absence of surveys is evidence that actual confusion cannot be shown."

*Sports Authority, Inc.*, 89 F.3d at 964.  In the absence of surveys, anecdotal evidence can

sometimes still be used to show confusion, however it must be more than *de minimis*.

*Real News Project, Inc.*, 2008 WL 2229830, at *17.

There are two pieces of evidence in the record that could anecdotally support a

finding of actual confusion, however for different reasons neither of them do.  The first

piece of evidence is that a friend of Rose sent him an e-mail stating "I see that Naxos

distributes Medici.  Is that yours?"  However "inquiries about the relationship between an

owner of a mark and an alleged infringer do not amount to actual confusion.  Indeed,

such inquiries are arguably premised upon a *lack* of confusion between the products such

as to inspire the inquiry itself."  *Nora Bevs v. Perrier Group of Am.*, 269 F.3d 114, 124

(2d Cir. 2001) (emphasis in original) (upholding district court's grant of summary

judgment).  Therefore the e-mail inquiry does not support a finding of actual confusion.

The second piece of evidence is *Gramaphone* magazine's mistaken publication that

defendants' recordings were released on plaintiffs' label.  Although *Gramaphone* was

apparently confused, its mis-publication exhibits the wrong type of confusion for

purposes of the Lanham Act because "trade-mark infringement protects only against

mistaken purchasing decisions and not against confusion generally."  *Lang*, 949 F.2d at

583.  Moreover, the misattribution by *Gramaphone* and the solitary e-mail from Rose's

friend are *de minimis* and could not alone support a finding of actual confusion.  The

Court finds that this factor does not weigh in plaintiff's favor.

### (6) The Defendants' Good Faith in Adopting its Own Mark

The intent factor "looks to whether the defendant adopted its mark with the

intention of capitalizing on plaintiff's reputation and goodwill and any confusion between

his and the senior user's product."  *Edison Brothers Stores, Inc. v. Cosmaic, Inc.*, 651 F.

Supp. 1547, 1560 (S.D.N.Y. 1987) (quoted in *Lang*, 949 F.2d at 583).  Plaintiff does not

argue that defendant intended to capitalize on the goodwill of  "Medici Classics

Productions" or on associated consumer confusion.  Rather, plaintiff argues that because

defendants "materially increased their use of the infringing marks after they were on

actual notice" of plaintiff's registration, and because defendants should have known of

plaintiff's registration when they began using their marks, it has "adequately placed

Defendants' bona fides in question" for purposes of summary judgment.  (Pl. Mem. 13-

14.)  Plaintiff simply misunderstands the standard, and does not allege an intent to

capitalize on Medici Classics Productions' limited success.  Nor is there any evidence of

such intent.  In fact, given Medici Classics' low sales volume and the lack of evidence of

secondary meaning, it is patently unreasonable to conclude that defendants sought to usurp that reputation or to otherwise capitalize on it.  Moreover, even if defendant should have, could have, or did know of plaintiff's registration, "[p]rior knowledge of a senior user's mark does not, without more, create an inference of bad faith."  *Playtex Prods. Inc. v. Georgia-Pacific Corp.*, 390 F.3d 158, 165 (2d Cir. 2004) (summary judgment affirmed).

### (7) The Quality of Defendants' Product

"This factor generally considers whether the senior user's reputation could be tarnished by [the] inferior merchandise of the junior user."  *Cadbury*, 73 F.3d at 483 (quoting *Scarves by Vera, Inc. v. Todo Imports Ltd.*, 544 F.2d 1167, 1172 (2d Cir. 1976). Plaintiff does not allege that defendant's products are inferior, it merely notes that "Medici does not have any control over Defendant's infringing use" and concludes that "because any doubts should be resolved in favor of Medici, this factor favors Medici." (Pl. Mem. 14.)  Although plaintiff is right that at the summary judgment stage doubts are to be resolved in its favor, plaintiff's "response must—by affidavits or as otherwise provided in [Rule 56]—set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e).  Plaintiff has not done so, and nothing in the record suggests that defendants' products are of inferior quality.  Accordingly, this factor is entitled to no weight.

### (8) The Sophistication of the Buyers

This factor is concerned with "[t]he general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods…."  *McGregor-Doniger, Inc.*

*v. Drizzle Inc.*, 599 F.2d 1126, 1137 (2d Cir. 1979).  In general, "[t]he more sophisticated

the consumer, the less likely they are to be misled by similarity in marks."  *TCPIP*

*Holding Co., Inc. v. Haar Communications, Inc.*, 244 F.3d 88, 102 (2d Cir. 2001).  In this

case, both parties agree that the ordinary purchasers are purchasers of classical music, in

retail stores and on the internet.  Several courts have noted that purchasers of music are

generally sophisticated and unlikely to be confused by similarities between labels as

opposed to particular performers or songs, which are their usual object.  "[B]uyers of

musical recordings are relatively sophisticated consumers whose purchasing decisions are

driven by a recognition of and search for a particular artist or composition, and whose

awareness of the record label-if such awareness even exists at the time of purchase-is at

best a peripheral concern compared to the contents of the recording….  The notion that

customers typically enter a record store with the request, 'Please show me the MCA

records', or 'Where can one find your *Deutsche Grammophon* CD's' is simply counter-

intuitive."  *Sunenblick v. Harrell*, 895 F. Supp. 616, 634 (S.D.N.Y. 1995) (quoted with

approval in *Strange Music*, 326 F. Supp. 2d at 495).  Moreover, internet shoppers are

even less likely to suffer confusion over similar label marks because they are typically

"searching for an artist's composition or performance" *Strange Music*, 326 F. Supp. 2d at

495 (citing *1-800 Contacts, Inc. v. WhenU.com*, 309 F. Supp. 2d 467, 502 (S.D.N.Y.

2003) ("Internet shoppers have a specific product in mind when they go online and have

the ability to navigate the Internet to get what they want.").  Nothing in the record refutes

either of these inferences, and the parties agree that "[a]rtist and repertoire, not label

name, are the main factors that drive a consumer's decision to purchase a classical music

recording." (56.1 ¶ 78.)  Accordingly, the Court finds that the sophistication of buyers factor weighs in defendants' favor.

### 9.  Balancing the Factors

The Court's analysis of the *Polaroid* factors reveals that plaintiff cannot demonstrate a likelihood of confusion.  Several factors weigh heavily against plaintiff: the mark itself is weak because it has not developed secondary meaning; as used, the marks do not look similar; there is no evidence of actual confusion or bad faith; the products are of equal quality; and the ordinary purchasers are sophisticated and unlikely to be confused by similarity in the labels on the CDs and DVDs they purchase.  Only the competitive proximity of the products and the likelihood of bridging the gap favor plaintiff, and only weakly so.  Balancing all the factors, the Court finds that a reasonable jury could not conclude that defendants' marks are likely to cause confusion with plaintiff's.  Accordingly, defendants' motion for summary judgment on plaintiff's trademark infringement claim is granted.[4]

## B.  Attorney's Fees and Sanctions

Defendants also request an award of attorneys' fees and sanctions because plaintiff pressed on after losing its preliminary injunction motion.  However "parties are held to different standards of proof in preliminary injunction hearings than in motions for summary judgment," and "findings of fact at the preliminary injunction stage are not as fully fleshed out as at the summary judgment stage…."  *Malletier v. Dooney & Bourke,*

---

[4] There having been no showing of bad faith, actual confusion, or likelihood of confusion, plaintiff's unfair competition claim under New York law is also dismissed.  *See e.g. Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 35 (2d Cir. 1995) ("In a common law unfair competition claim under New York law, the plaintiff must show either actual confusion in an action for damages or a likelihood of confusion for equitable relief.  Additionally, there must be some showing of bad faith.") (citations omitted).

*Inc.*, 561 F. Supp. 2d 368, (S.D.N.Y. 2008) (citing *DeSmeth v. Samsung Am.*, No. 92 Civ. 3710, 1998 WL 315469, at *2 (S.D.N.Y. June 16, 1998)).  The Court does not find that plaintiff acted in bad faith merely because it pressed on to the summary judgment phase in its attempts to enforce its registered trademarks.  Notwithstanding defendants' arguments that the facts in the present case "are as fully fleshed out as they were during the hearings on the motion for preliminary injunction," (Def. Mem. 8), the Court does not conclude that there are here such "exceptional circumstances" as warrant an award of attorneys' fees under the Lanham Act.  15 U.S.C. § 1117(a) (permitting award of attorneys' fees to the prevailing party under exceptional circumstances).  Nor does the Court concludes that plaintiff's counsel has multiplied the proceedings "unreasonably and vexatiously."  28 U.S.C. § 1927.  Indeed, since the preliminary injunction decision issued well into discovery, less expense was generated by plaintiff's decision to test his claims against the Rule 56 standard than might have been the case otherwise.  Accordingly, defendants' request for attorneys' fees and sanctions is denied.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment **[93]** is GRANTED in part and plaintiff's trademark infringement claims are DISMISSED. Defendants' request for attorneys' fees and sanctions is DENIED.  The clerk is directed to close the case.

SO ORDERED.

Dated:  New York, New York
February 9, 2010

_____
Richard J. Holwell
United States District Judge

**APPENDIX OF MARKS**



Plaintiff's Medici Classics' logo.
Source: Defs.' Mem. of Law in Supp. of
Mot. to Dismiss, at 22 (Sept. 19, 2008).

medici
arts

Defendants' Medici Arts logo.
Source: Defs.' Mem. of Law in Supp. of
Mot. to Dismiss, at 22 (Sept. 19, 2008).



Defendants' Medici Masters' logo.
Source: mediciarts.co.uk (visited Dec. 19, 2008).

22